UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA RODRIGUEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMCAST INC., et al.,<br><br>　　　　Defendants. | Case No. 16-cv-04413-SK<br><br>**ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON REMAND**<br><br>Regarding Docket No. 29 |

Defendant Comcast Communications Management LLC ("Comcast") filed a motion for summary judgment. The Court addressed and granted summary judgment on some, but not all, of the issues raised. On remand, the Court now considers the remaining issues raised in Comcast's motion for summary judgment. Having carefully considered the parties' papers, relevant legal authority, and the record in the case, the Court hereby GRANTS IN PART and DENIES IN PART Comcast's motion for the reasons set forth below.

**BACKGROUND**

**A.　Plaintiff's Employment at Comcast.**

Plaintiff worked as a customer service representative for Comcast until Comcast terminated her employment on December 15, 2015. Plaintiff suffered a brain hemorrhage in March of 2015 and was on leave from work until the termination of her employment. She contends that Comcast terminated her employment in violation of the California Fair Housing and Employment Act ("FEHA"), California Government Code § 12940, *et seq*. In opposition to Comcast's pending motion for summary judgment, Plaintiff argues that she was requesting, as an accommodation, additional leave from work until April 19, 2016 and that Comcast's failure to do so constitutes discrimination based on her disability in violation of FEHA. Plaintiff also brings claims under FEHA for failure to accommodate by providing Plaintiff with her requested leave,

failure to engage in the interactive process, for retaliation for requesting leave as an accommodation, and failure to prevent discrimination, as well as a claim for wrongful termination in violation of public policy.

Under its personal leave policy, Comcast provided non-disabled employees up to six months of personal leave. (Dkt. No. 29-1, Ex. B to Declaration of Mark S. Spring (Deposition of Sarah Stofferahn) at 39:11-19.) However, Comcast made individual determinations as to whether the law required additional time off as accommodations under the ADA. (*Id*. at 39:11-40:1; Dkt. No. 30-5, Ex. H to Declaration of Daniel Ray Bacon (Deposition of Sophia Lowenberg) at 128:1-21.)

In early March 2015, Plaintiff suffered a brain hemorrhage. (Dkt. No. 29-1, Ex. A to Spring Decl. (Deposition of Gloria Rodriguez) at 89:23-93:9.) She was on leave from Comcast from March 2, 2015, until her termination in December 2015. (Dkt. No. 29-1, Ex. A at 117:8-13.) Comcast provided her the first leave after her hemorrhage from March 2 through May 22, 2015 under the Family Medical Leave Act. (Dkt. No. 29-1, Ex. A at 118:8-12; Dkt. No. 29-4 (Declaration of Ezra Moore), ¶4, Ex.1.)

On July 1, 2015, Plaintiff's doctor, Frank Tortorice, completed a medical certification stating that Plaintiff was limited in her walking and standing for long periods of time, had blurred and double vision, and was limited in her driving, reading, and lifting. (Dkt. No. 29-3 (Declaration of Sarah Stofferahn), Ex. 4.) He further stated that "due to blurred vision/double vision being temporarily blind in her L eye, [Plaintiff] has an unsteady gait, cannot read without getting dizzy, and cannot operate a motor vehicle." (*Id*.) Tortorice said that Plaintiff had an expected recovery time of 6 months. (*Id*.) In response to a question about the reasonable accommodations that would enable Plaintiff to perform her essential job functions, he responded that Plaintiff "is not able to work. Recovery time for my patient's physical impairment is important." (*Id*.) In response to this certification, Comcast provided Plaintiff with a medical leave of absence from May 23 through August 18, 2015. (Dkt. No. 29-1, Ex. A at 117:15-17, 163:22-164:2, Ex. 17 to Rodriguez Depo; Dkt. No. 29-4 (Moore Decl.), Ex. 1.)

On August 21, 2015 Plaintiff's physician submitted another medical certification regarding

2

Plaintiff's medical condition. (Dkt. No. 29-3, Ex. 4.) Tortorice stated that Plaintiff had the same symptoms and limitations as stated on the prior medical certification. (*Id.*) He stated that her expected recovery time was six months from May 23, 2015 and provided October 19, 2015 as her estimated date to return to work. (*Id.*) Comcast extended Plaintiff's leave through October 19, 2015. (Dkt. No. 29-2, Ex. A to Declaration of Marianne C. Koepf (Deposition of Sophia Lowenberg) at 36:12-37:23, 77:21-79:13, Ex. 17 to Lowenberg Depo.)

Plaintiff did not return to work and on November 12, 2015, and she submitted another medical certification from Tortorice dated November 9, 2015. (Dkt. No. 29-3, Ex. 4.) Tortorice stated that Plaintiff was limited in her walking and standing for long periods of time, had blurred and double vision, and was limited in her driving, reading, lifting, and speaking. (Dkt. No. 29-3, Ex. 4.) He further stated that "due to blurred vision/double vision being temporarily blind in her L eye, [Plaintiff] has an unsteady gait, cannot drive, read for long periods of time, and stand for long periods of time." (*Id.*) He stated that her expected recovery time was six months from October 19, 2015 and that the expected date she could return to work was April 19, 2016. (*Id.*)

Although the expected return to work dates were estimates or predictions, Tortorice did not believe Plaintiff's leave was indefinite. (Dkt. No. 30-4, Ex. F to Bacon Decl. (Tortorice Deposition) at 17:19-18:2.) Tortorice explained that, with a serious issue such as Plaintiff's, with brain surgery, a patient must have adequate time to heal. Patients often heal at different rates and need additional time. (Dkt. No. 30-4, Ex. F at 18:4-10.) With respect to the April 19, 2016 expected return to work date, Tortorice testified:

> When we make these evaluations, they're at a certain point in time, and my best judgment at that time was that it would be possible that by April, we would have a better sense that she should be able to return to work -- without being certain in a complex brain injury.

(Dkt. No. 30-4, Ex. F at 20:19-24.) However, Tortorice did not believe that Plaintiff was permanently disabled. He believed she would be able to heal and work again. (Dkt. No. 30-4, Ex. F at 19:8-22.) As of November 30, 2015, Tortorice had a question about whether Plaintiff may be permanently disabled, but he had not assessed her with or concluded that she had a permanent disability. (Dkt. No. 30-4, Ex. F at 83:1-9.) He testified that Plaintiff's condition was particularly

3

difficult to estimate when she could return to work. (Dkt. No. 30-4, Ex. F at 76:1-6.)

In early November 2015, Lowenberg and Stofferahn discussed Plaintiff's situation and request for additional leave. (Dkt. No. 29-3, ¶ 8.) Lowenberg recommended terminating Plaintiff's employment because of the indefinite nature of her need for leave. (*Id.*) On November 16, 2015, Lowenberg mistakenly told Plaintiff that her job was terminated. (Dkt. No. 29-1, Ex. B at 92:12-94:15); Dkt. No. 30-1 (Declaration of Gloria Rodriguez), ¶ 20.) On December 2, 2015, Lowenberg corrected that mistake and explained to Plaintiff that her employment had not been terminated. (Dkt. No. 30-1, ¶ 21.)

On December 7, 2015, Comcast requested additional information from Tortorice, and asked if Plaintiff could return to work in an alternative sedentary position. (Dkt. No. 29-3, Ex. 3.) Tortorice responded that, at that time, Plaintiff was not able to return to work, even in an alternative, sedentary position and that even with reasonable accommodation, she remained totally disabled. (*Id.*)

Stofferahn then determined that Plaintiff would not be able to return on or near the April 27, 2016, date provided by Tortorice and that Plaintiff was actually seeking indefinite leave. Stofferahn testified that she thought Plaintiff was seeking an indefinite leave because this was the longest extension that Plaintiff had requested and Stofferahn thought that Tortorice did not know with reasonable certainty when Plaintiff would be able to return to work without a reasonable accommodation. (Dkt. No. 29-1, Ex. B at 42:5-43-14, 44:15-45:8.) Stofferahn also was aware that Plaintiff had applied for and was approved for long term disability benefits through September of 2016, which also informed Stofferahn's belief that Plaintiff would not be able to return to work in April of 2016. (Dkt. No. 29-1, Ex. B at 45:4-8.)

Stofferahn then made the decision to terminate Plaintiff's employment, effective December 16, 2015. (Dkt. No. 29-3, ¶ 11; Dkt. No. 29-2, Ex. A at 121:9-14; Dkt. No. 30-1, ¶ 24, Ex. I.) In the letter notifying Plaintiff of the termination of her employment, Comcast informed Plaintiff that she was eligible for rehire if she became able to work. (Dkt. No. 29-1, Ex. A at Ex. 5 to Rodriguez Depo.)

Plaintiff testified that at the time her employment was terminated in December 2015, she

4

was not well enough to work:

> I was not able to stand up the same way. I -- I was not able to talk clearly. Half of my -- my left side of my face was paralyze [*sic*]. So the doctor said approximately it will take six month [*sic*] because he wanted to do another MRI to see how I was healing inside.
>
> . . .
>
> It was still paralyzed. And my eye, my left eye, I was seeing -- I was still seeing double. Not like when I first got my surgery, but I was still -- I was healing.
>
> . . .
>
> . . . I had a lot of problem concentrating [*sic*]. It was my brain, it was -- I try hard.

(Dkt. No. 29-1, Ex. A at 26:18-25, 27:14-19, 27:25-28:1, 28:15-16.)

Dr. Matthew Liss was employed by or was a consultant for Comcast. (Dkt. No. 30-5, Ex. H at 39:7-20.) Liss participated in compliance review calls with Comcast. (Dkt. No. 30-5, Ex. H at 43:1-4.) In these calls, Comcast would review next steps, including whether Comcast should terminate employment or return the employee to work. (Dkt. No. 30-5, Ex. H at 40:8-24.) Liss reviewed documentation and determined from a doctor's perspective whether additional clarification was needed to make any recommendation. (Dkt. No. 30-5, Ex. H at 51:1-9.) At the time of her deposition, Lowenberg did not have an independent recollection, apart from looking at the documents, of what was discussed on the compliance call in November 2015 to discuss Plaintiff. (Dkt. No. 30-5, Ex. H at 51:10-15.) Lowenberg did not recall having any conversations with Liss regarding Plaintiff, but Lowenburg stated that there could have been a conversation. (Dkt. No. 30-5, Ex. H at 51:22-52:14.)

**B.   Post Termination.**

On January 28, 2016, Dr. Michael T. Lawton signed a form stating that Plaintiff could return to work without any restrictions on March 28, 2016. (Dkt. No. 30-1, Ex. D.)

In August 2016, Plaintiff's counsel informed Comcast that she had recovered and was able to return to work. (Dkt. No. 29-1 (Spring Decl.), ¶ 7.) Comcast then offered Plaintiff the opportunity to return to work at her same position at the same pay rate. (Dkt. No. 30-1, ¶ 24, Ex. J.) Plaintiff did not contact or otherwise respond to Comcast in response to this offer letter. (Dkt.

5

No. 29-1, Ex. A at 89:4-10.) Nor did Plaintiff ever discuss this offer letter with any doctors. (Dkt. No. 29-1, Ex. A at 89:11-12.) Plaintiff testified that she declined the offer because she did not trust Comcast after it fired her. (Dkt. No. 29-1, Ex. A at 50:22-51:7, 52:10-15.) She also testified that she did not believe that she was medically allowed to work at that point. (Dkt. No. 29-1, Ex. A at 88:1-4.) In early 2017, Plaintiff was diagnosed with and treated for severe depressive disorder. (Dkt. No. 30-5, Ex. I to Bacon Decl. (Deposition of Juan Rodriguez, Psy. D.) at 52:16-22, Ex. J (Deposition of Elizabeth Crockett-Chaney, Psy. D.) at 31:11-14.)[1] Plaintiff testified that the termination of her employment was emotionally traumatic and that she "was too stressed and depressed to look for other work until February 2017." (Dkt. No. 30-1 (Rodriguez Decl.), ¶ 31.)

When Plaintiff testified at her deposition on January 24, 2017, she stated that she had not applied for any jobs since she was terminated on December 16, 2015. (Dkt. No. 29-1, Ex. A at 47:7-9.) She further testified that she was still on disability, that her brain was better but still not at one hundred percent, and that she was scared emotionally to go back to work. (Dkt. No. 29-1, Ex. A at 47:19-24.) Plaintiff testified at her deposition on January 24, 2017 that she did not have any medical release from a doctor clearing her to work. (Dkt. No. 29-1, Ex. A at 87:19-25.) However, on October 14, 2017, Plaintiff signed a declaration in which she stated that she was able to physically work at Comcast and perform all of her essential job functions without any accommodation by early January 2016. (Dkt. No. 30-1, ¶ 30.) She clarified that she had forgotten at her deposition about the release from Lawton signed on January 28, 2016, stating that she could return to work without restrictions by March 28, 2020. (Dkt. No. 30-1, ¶ 28, Ex. D.)

As of January 30, 2017, when she was deposed, Stofferahn testified that she had not seen any medical documentation since November 2015 regarding Plaintiff's ability to work. (Dkt. No. 29-1, Ex. B 46:17-47:2.) Additionally, as of January 30, 2017, Stofferahn thought that Plaintiff was still approved for long term disability and was still receiving social security disability as of January 30, 2017. (Dkt. No. 29-1, Ex. B 47:3-6.)

---

[1] In her supplemental brief, Plaintiff cites to the entire deposition transcripts of Drs. Rodriguez and Crockett-Chaney, which were over eighty pages combined. It is not the Court's job to comb through large blocks of evidence. In the future, Plaintiff is required to cite to the specific page and line numbers on which she is relying.

**C.      Plaintiff's Social Security Proceedings.**

On September 11, 2015, Plaintiff applied for social security disability insurance ("SSDI") payments. (Dkt. No. 30-1, ¶ 11; *see also* Dkt. No. 42 (Plaintiff's documents from the Social Security Administration ("SSA")) at p. 8.) Plaintiff represented to the SSA that she was disabled due to brain cavernous malformation, double vision, headaches, slow speech, memory loss, numbness on the left side of her face, unsteady gate, impaired vision in the left eye, and a hernia. (Dkt. No. 40 (Declaration of Marianne C. Koepf attaching Plaintiff's SSDI Records), Ex. D at SSA 006.) She asserted to the SSA that she was unable to work starting on March 2, 2015. (Dkt. No. 40, Ex. D at SSA 006-7.)

On December 9, 2015, Plaintiff was evaluated by Dr. Thanh Quoc Tran for a neurology disability evaluation for the Social Security Administration. (Dkt. No. 40, Ex. D at SSA 026-028.) Plaintiff appears to have reported to Dr. Tran that, after her operation in April 2015, she continued to have poor balance, daily headaches, poor memory, and left face numbness and that she was not able to continue to work. (Dkt. No. 40, Ex. D at SSA 026, 028.) During a psychological disability evaluation for SSDI benefits conducted on December 14, 2015, Plaintiff reported that she continued to experience headaches, dizziness, decreased balance, numbness on the left side of her head and face, and decreased ability to produce tears from her left eye. (Dkt. No. 40, Ex. D at SSA 021.) She further told the evaluator that she was unable to return to work due to her physical health problems and cognitive symptoms. (Dkt. No. 40, Ex. D at SSA 022.) The psychological disability evaluator also noted that she reported forgetfulness and decreased concentration since her brain surgery. (Dkt. No. 40, Ex. D at SSA 024.)

The SSA determined in January 2016 that Plaintiff was disabled as of March 2, 2015 and that medical improvement was not expected. (Dkt. No. 40, Ex. D. at SSA 018-19; *see also* Dkt. No. 29-1, Ex. A at 133:14-18, Ex. 11 to Rodriguez Depo.) Plaintiff learned that the SSA approved her application for disability benefits on February 21, 2016. (Dkt. No. 30-1 at ¶ 11; *see also* Dkt. No. 42 at pp. 12-16.) The letter informing her of the SSA's determination that she is disabled stated that it was important for her to report any changes in her condition to the SSA, including

1  that fact that her health had improved if that occurred. (Dkt. No. 42 at p. 13.) As of January 24,
2  2017, Plaintiff was continuing to receive monthly SSDI checks, and she understood that she would
3  continue to receive those checks for the foreseeable future. (Dkt. No. 29-1, Ex. A at 134:1-9.)
4       In her declaration signed on October 14, 2017, Plaintiff represented that was still receiving
5  checks from the SSA. (Dkt. No. 30-1, ¶ 34.) Comcast argues that Plaintiff is continuing to
6  receive SSDI benefits from the SSA. (Dkt. No. 29-2 (Koepf Decl.), Ex. B.) Plaintiff confirmed at
7  the hearing on Comcast's motion for summary judgment held on November 6, 2017, that she was
8  still receiving monthly SSDI payments and that she has not informed the SSA about any
9  improvement in her disabling conditions.

**D.  Punitive Damages.**

Non-expert discovery closed on May 18, 2017. (Dkt. No. 15.) After the deadline had passed, on May 26, 2017, Plaintiff requested leave to conduct a deposition of Comcast pursuant to Federal Rule of Civil Procedure 30(b)(6) regarding Comcast's and Comcast's related entities' policies and procedures regarding steps taken to accommodate disabled employees, the process for engaging in the interactive process, policies and practices for evaluating whether Comcast could accommodate a disabled employee, and steps taken to prevent disability discrimination. (Dkt. No. 23.) The Court denied this request because Plaintiff did not explain how or why those general policies and procedures are relevant to the litigation in light of the fact that the two people who made the decision regarding Plaintiff's employment had already been deposed. (Dkt. No. 25.) Additionally, the scope of the deposition subpoena was overbroad. (*Id*.)

In her brief filed in opposition to Comcast's motion for summary judgment, Plaintiff requested permission to conduct a deposition of a Comcast corporate official pursuant to Federal Rule of Civil Procedure 30(b)(6) "in order to make her case for punitive damages." (Dkt. No. 31 at p. 25.)

**ANALYSIS**

**A.  Applicable Legal Standard on Motion for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary

judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, set forth specific facts showing that there is a genuine issue for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care to adequately point a court to the evidence precluding summary judgment because a court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation omitted). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

///

///

**B.       Comcast's Motion for Summary Judgment.**

      **1.       Whether Plaintiff Can Demonstrate She Was Qualified to Perform the Essential Functions of Her Job.**

Plaintiff alleges claims for disability discrimination, failure to provide a reasonable accommodation, and failure to engage in the interactive process under FEHA.  Each claim requires Plaintiff to demonstrate that she was qualified to perform the essential functions of her job, with or without reasonable accommodations.  *See Green v. State*, 42 Cal. 4th 254, 264 (2007) ("FEHA and the [Americans with Disabilities Act ("ADA")] both limit their protective scope to those employees with a disability who can perform the essential duties of the employment position with reasonable accommodation."); *see also Nadaf-Rahrov v. Neiman Marcus Group, Inc.*, 166 Cal. App. 4th 952 (2008) (requiring Plaintiff to prove a reasonable accommodation existed that would enable plaintiff to perform her job in order to defeat summary judgment on all three types of claims under FEHA).

The Court initially found that Plaintiff was estopped from arguing that she was she is qualified and could perform the essential duties of her job under FEHA in light of the statements she made to obtain SSDI benefits.  The Ninth Circuit reversed the Court on this decision.  Accordingly, the Court will consider whether, in light of the evidence in the record viewed in the light most favorable to Plaintiff, there is a material question of fact regarding Plaintiff's ability to work.  Comcast argues that Plaintiff's request for an extension of leave to April 2016 was a request for indefinite leave, which Comcast is not required to provide.  Upon review of the evidence, the Court finds that a reasonable juror could conclude that Plaintiff's request for additional leave was just that – a request for additional time off, but a finite one.

Under the FEHA, "a finite leave can be a reasonable accommodation . . ., provided it is likely that at the end of the leave, the employee would be able to perform his or her duties." *Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 226 (1999).  Nevertheless, "[r]easonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected." *Id.* (citation omitted).  Comcast argues that because it was not certain that Plaintiff would be able to return to work on April 19, 2016, her request to further extend her leave until mid-April actually was a request for indefinite leave.  However, reviewing the facts in

1    the light most favorable to Plaintiff, it is far from clear that her request for leave until mid-April
2    was a request for indefinite leave. Although Tortorice, her doctor, was not certain that Plaintiff
3    would be able to return to work on April 19, 2016, he did not believe that Plaintiff's leave was
4    indefinite. (Dkt. No. 30-4, Ex. F at 17:19-18.) Nor did he believe that Plaintiff was permanently
5    disabled, as he believed she would be able to heal and work again. (Dkt. No. 30-4, Ex. F at 19:8-
6    22.) Although Tortorice may not have been one hundred percent certain, his opinion that Plaintiff
7    would be able to return to work on April 19, 2016 was his "best judgment at that time." (Dkt. No.
8    30-4, Ex. F at 20:19-24.) As the Ninth Circuit recently noted, "the mere fact that a medical leave
9    has been repeatedly extended does not necessarily establish that it would continue indefinitely."
10   *Ruiz v. ParadigmWorks Grp., Inc.*, 787 F. App'x 384, 386 (9th Cir. 2019) (quoting *Nadaf-Rahrov*
11   *v. Neiman Marcus Grp., Inc.*, 166 Cal.App.4th 952, 988 (2008)).

12   Notably, Comcast does not argue that extending her leave until mid-April, and thus
13   granting her thirteen months in total, was unreasonable. It appears that it was the prospect of
14   Plaintiff requesting additional time off beyond mid-April which motivated Comcast to terminate
15   her in December 2015. However, Comcast had alternatives which may have been reasonable. It
16   could have requested clarification regarding Tortorice's opinion and whether he believed she
17   would actually be able to return to work by mid-April. Alternatively, Comcast could have granted
18   her leave until mid-April with the condition that would be her final leave extension and anything
19   beyond that would be considered unreasonable. The Court cannot find, as a matter of law, that
20   Plaintiff's request for leave to mid-April 2016 was in fact a request for an indefinite leave.
21   Although Comcast may have had reason to doubt Plaintiff's doctors, viewing the evidence in the
22   light most favorable to her, Plaintiff presented Comcast with a request to extend her leave to a
23   definite date and Comcast said no. Nor can the Court find, in the absence of any direct argument
24   and supporting authority, that a finite period of thirteen months under these circumstances was
25   unreasonable.

26   The Court also cannot find, as a matter of law, that Plaintiff was not capable of returning to
27   work by mid-April 2016. A jury may ultimately find that her statements, including those to the
28   Social Security Administration, show that she was incapable of returning to work, Plaintiff is not

11

precluded from demonstrating that she had sufficiently healed and was ready to work. Accordingly, the Court DENIES Comcast's motion for summary judgment on Plaintiff's first claim for disability discrimination under FEHA. For similar reasons, the Court also DENIES Comcast's motion for summary judgment on Plaintiff's second, third, and sixth claims for failure to accommodate, to engage in the interactive process, and to prevent discrimination under FEHA, as well as Plaintiff's seventh claim for termination in violation of public policy.

### 2. Plaintiff's Claim of Retaliation.

To succeed on a claim of retaliation under FEHA, "a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1042 (2005). Plaintiff contends that her requests for accommodations constitute the requisite "protected activity." The Ninth Circuit reversed this Court on its determination that her requests for accommodation, standing alone, did not constitute a "protected activity." Therefore, the Court will examine the evidence in the record to determine whether there is sufficient evidence to support a finding by a reasonable juror that Comcast retaliated against Plaintiff for requesting time off from work as an accommodation.

Upon review of the evidence, the Court finds that there is no evidence to show a causal link between Plaintiff's protected activity and Comcast's actions. Plaintiff relies on the timing – that she was terminated soon after she requested additional time off. However, when viewing the evidence in the light most favorable to Plaintiff, there is no evidence that Comcast terminated her employment *because* she made a request for an accommodation. Instead, the evidence only shows that Comcast terminated her employment because it believed that she would not be able to return to work in mid-April. In other words, Comcast determined that it could not accommodate Plaintiff's request and provide her with the additional time off of work. Plaintiff points to no evidence showing otherwise.

As discussed above, Plaintiff is able to proceed on her claims of discrimination, failure to accommodate, and failure to engage in the interactive process based on the facts in the record. However, because there are no facts to support an inference that Comcast retaliated against

12

1  Plaintiff for requesting additional time off of work, the Court GRANTS Comcast's motion for

2  summary judgment as to Plaintiff's fifth claim for retaliation under FEHA.

### 3. Mitigation of Damages.

Comcast moved for summary judgment on Plaintiff's claims for damages on the grounds that she failed to mitigate her damages. In her original opposition brief, Plaintiff failed to address this argument. However, in her supplemental brief filed after this case was remanded back from the Ninth Circuit, Plaintiff does argue against this point and cite to evidence she filed with her original opposition brief. Plaintiff should have opposed Comcast's argument in the first briefing round, or alternatively, should have requested leave to address it in her supplemental brief. She did neither. Nevertheless, in the interests of fairness and because the Court provided Comcast an opportunity to respond, the Court will consider Plaintiff's newly raised argument.

"Under California law, an employee who has been wrongfully terminated has a duty to mitigate damages through reasonable efforts to achieve other employment." *Boehm v. American Broad. Co.*, 929 F.2d 482, 485 (9th Cir. 1991). If the employer demonstrates that the employee rejected offers of comparable or substantially similar employment, then liability for backpay stops accruing. *Id*. The burden then shifts to the employee to establish that "special circumstances" justified her rejection of the offer. *Id*. Whether Plaintiff acted reasonably in mitigating damages is a question of fact. *Ortiz v. Bank of Am. Nat. Tr. & Sav. Ass'n*, 852 F.2d 383, 387 (9th Cir. 1987) (finding that plaintiff's "poor mental condition" was substantial evidence supporting the jury's finding of "special circumstances" which rendered reasonable plaintiff's refusal of reinstatement).

Here, it appears undisputed that Comcast offered to reinstate Plaintiff to the same or a substantially similar job and that Plaintiff rejected the offer in August 2016 after Plaintiff's counsel notified Comcast that Plaintiff could return to work. However, Plaintiff submits evidence which creates a question of fact as to whether her rejection of the offer was reasonable. She suffered from severe depression after her employment was terminated, and she feared that Comcast would treat her badly again. Even though some objective parties might view these reasons as very weak, viewing the evidence in the light most favorable to Plaintiff, the Court cannot find as a matter of law that Plaintiff's rejection of Comcast's offer was unreasonable.

1  Additionally, the Court finds that there are questions of fact precluding summary judgment on the
2  grounds that Plaintiff failed to act reasonably in looking for other employment. Accordingly, the
3  Court DENIES Comcast's motion for summary judgment on this grounds.

### 4. Punitive Damages.

Plaintiff also failed to address Comcast's arguments regarding punitive damages in her initial opposition brief. Again, in the interests of fairness, the Court will consider her belated arguments raised in her supplemental brief.

To obtain punitive damages, Plaintiff has the burden to show by "clear and convincing evidence" that an officer, director, or "managing agent" of Comcast acted with "malice, oppression, or fraud." Cal. Civ. Code § 3294. Under California law, an employer is not liable for punitive damages based upon the conduct of an employee unless the employer: (1) had advance knowledge of the employee's unfitness and acted with "conscious disregard of the rights or safety of others;" (2) authorized or ratified the wrongful conduct; or (3) was personally guilty of oppression, fraud, or malice. Cal. Civ. Code § 3294(b). If the employer is a corporation, "the advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." Cal. Civ. Code § 3294(b). In order to qualify as an "officer, director, or managing agent of the corporation," the California Supreme Court has held that the corporate decision maker must have "substantial discretionary authority over decisions that ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 577 (1999). Merely having the power to hire and fire is not sufficient to establish that an employee is a "managing agent." *White*, 21 Cal. 4th at 577.

Plaintiff now argues that Stofferahn was a managing agent.[2] Another court in this district examined Stofferahn's role at Comcast and determined, on a motion for summary judgment, that she was not a managing agent. *Plaza v. Comcast Cable Commc'ns Mgmt., LLC*, 2015 WL 7770215, at *4 (N.D. Cal. Dec. 3, 2015) ("Here, the only people involved with the decisions Plaza challenges were Stofferahn and Helbig, neither of whom had substantial discretionary authority

---

[2] Plaintiff does not argue that Lowenberg was a managing agent.

14

over decisions that ultimately determine corporate policy."). This Court agrees.

Stofferahn described her position at Comcast and her responsibilities as follows:

> During 2015, when I was involved in matters related to this case, my job title with Comcast was Senior Director, Employee Relations and HR Compliance. I provided support to the West Division and was based in Northern California. Even though I am a licensed attorney, my role with Comcast is one of compliance. I generally do not represent Comcast as an attorney. Neither during 2015, nor at any time before that, did I have the authority to make corporate policy or to exercise judgment over decisions that ultimately determine corporate policy. My position was to provide consultation and advice on employee matters for Comcast, primarily within the West Division, including leave issues and termination of employment decisions. I also spent time preparing training materials and providing training on employment law matters to other Comcast employees in the West Division. . . .

(Dkt. No. 29-3, ¶ 4.) Plaintiff does not submit any evidence to the contrary. Instead, Plaintiff argues that, because Stofferahn had authority to determine whether to discharge employees over a wide geographic region, which included a large number of employees, "her decisions, in the aggregate, unquestionably established Comcast policies and practice." (Dkt. No. 71 at p. 19.) In the absence of any evidence showing that Stofferahn had authority to make corporate policy or to exercise judgment over decisions that ultimately determined corporate policy, Plaintiff fails to demonstrate the existence of a question of fact which precludes summary judgment.[3]

Alternatively, even if Plaintiff could show there is a question of fact regarding whether Stofferahn was a managing agent, Plaintiff cannot meet her burden to show that Stofferahn acted with malice, oppression, or fraud. Stofferahn testified that she believed that Plaintiff would not be able to return to work in April 2016 and that Plaintiff was requesting an indefinite leave. On that basis, Stofferahn denied Plaintiff's request for an accommodation by extending her leave. While a

---

[3] In a footnote, Plaintiff "renews" her request to take a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) of a company officer or managing agent "to address the factual issues bearing on punitive damages." (Dkt. No. 71 at p. 20 n. 9.) Comcast responds that Plaintiff already took multiple depositions, including the depositions of both decision makers, Stofferahn and Lowenberg, as well as a 30(b)(6) corporate deposition in Philadelphia. (Dkt. No. 74 at p. 5.) Non-expert discovery closed in this case on May 18, 2017. (Dkt. No. 15.) On May 23, 2017, after the close of non-expert discovery, Plaintiff requested to take a 30(b)(6) deposition. (Dkt. No. 23.) The Court denied Plaintiff's request as overbroad and based on Plaintiff's failure to demonstrate relevance. In her renewal of her request to take a 30(b)(6) deposition, Plaintiff fails to address either of these points. The Court denies Plaintiff's request as untimely and unsupported.

jury may ultimately find that Stofferahn was mistaken, there is no evidence to support Plaintiff's belated argument that Stofferahn did so with malice, oppression or fraud. Accordingly, the Court GRANTS Comcast's motion for summary judgment as to Plaintiff's request for punitive damages.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Comcast's motion for summary judgment.

**IT IS SO ORDERED**.

Dated: July 30, 2020

_____
SALLIE KIM
United States Magistrate Judge